IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )      **CRIMINAL ACTION**
                                    )
v.                                  )      No.  12-10125-MLB
                                    )
COURTLAND J. GRAY,                  )
                                    )
                    Defendant.      )
_____ )

## MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to suppress evidence. (Doc. 16). The court held an evidentiary hearing on October 24, 2012.

### I. Facts

At about midnight on May 8, 2012, Wichita Police Officer Gnoc Nguyen was in his patrol car when he was directed by the police dispatcher to go to Remington Apartments at 6801 West Par Lane in Wichita on a "suspicious character call." The dispatcher "put out information that the subject was using drug[s]" and gave a description of a "red car, possible Cadillac." (Hearing Tr. at 3). Nguyen was informed by dispatch at some point that the subject car had just left the Par Lane location and was heading eastbound on Central street.

Wichita Police Officer Andrew Powers also received a call from the dispatcher to go to the Remington Apartments.[1] He testified "[t]he calling party was a security guard contracted by the apartment

---

[1] It is not clear from the evidence if the officers heard the same dispatch or were issued separate dispatches. The evidence is also unclear whether the two officers communicated with each other as Officer Nguyen searched for the Cadillac.

complex" who said "he observed some suspicious behavior from some males that were in the parking lot and he wanted us to check them out." (Tr. at 20). Powers was familiar with the apartment complex from several prior calls, although he was not familiar with this particular security guard. Powers went to the apartments and checked the area. The police dispatcher had reported that the suspects were three to four males in a red four-door Cadillac. The two in the front seat were identified as black males wearing white T-shirts. (Tr. at 21). After checking the area, Powers met with the security guard at a nearby YMCA parking lot.

Officer Nguyen was near the intersection of Central and Ridge streets when he got the dispatch. He was just to the west of where the red car likely would have turned east on to Central if it had come from the Remington Apartments. Nguyen headed east on Central and crossed a bridge over the "big ditch," a large culvert. There were no side streets over the big ditch where the red car might have turned before crossing the bridge. Nguyen looked but saw no red cars coming the other way.

There was a Quik Trip convenience store just across the bridge. As Nguyen drove by he saw a red car that looked like a Cadillac at one of the Quik Trip gas pumps. Nguyen turned around and pulled into the parking lot, pulling in at a diagonal behind the Cadillac. The area was well lit. The front part of Nguyen's hood or fender was a few feet behind the Cadillac such that the Cadillac could not have backed up without hitting Nguyen's car. The Cadillac was not obstructed from pulling forward.

No one was standing outside the Cadillac or putting gas in it.

-2-

Nguyen noticed the car was parked so close to the gas pump that there was not enough space on the driver's side for Nguyen to walk up to the driver's door. Nguyen testified that these facts made him suspicious, although he did not explain the nature of his suspicion.

When he pulled in behind the car, Nguyen turned on his "cruise lights" or "cruiser lights," which he described as "kind of like a parking light" on the right and left side of the light bar on top of his car. The cruiser lights do not flash. Nguyen said he turned these on "just so people notice it's my patrol vehicle" or so Officer Powers could see that his patrol car was there. Officer Nguyen initially agreed with defense counsel's assertion that he also turned on the lights on "to indicate to that car [the Cadillac] that it was stopped," but then clarified that the only purpose he remembers having was to let Officer Powers see where he was parked.

Nguyen radioed in the Cadillac's license plate. He got out of the patrol car and approached the front passenger door of the Cadillac. The passenger window was open and Nguyen could see the front passenger was an African-American male. Nguyen testified that he could smell a strong odor of raw marijuana coming from the car.

The facts after Nguyen smelled marijuana are more or less irrelevant to the motion to suppress, because Nguyen clearly had reasonable suspicion from that point on to detain the car and its occupants to investigate whether they were in possession of marijuana. (In fact, defendant does not challenge any aspect of the seizure after that point). In brief, Officer Nguyen spoke to the occupants of the car, obtained the driver's license of the driver, radioed it in and called Officer Powers for backup. Powers arrived a minute or two

-3-

later. He noticed the Cadillac had three-spoked chrome wheels. The security guard had told Powers during their conversation that the Cadillac driven by the suspects had unique three-spoked wheels.

The officers approached the Cadillac and directed the occupants, including defendant Courtland Gray, to get out of the car. Gray refused to get out at first. He resisted Powers' attempts to open the passenger door. When Gray finally did get out, Powers saw the handle of a semi-automatic handgun sticking out of his pocket. Powers retrieved the gun and put Gray in a patrol car. Upon returning to the Cadillac, Powers saw an open backpack where Gray had been sitting. Powers could see that it contained a gallon-sized clear plastic baggie full of marijuana.

## II. Fourth Amendment Standards

The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

A person is "seized" by police when an officer, by means of physical force or show of authority, terminates or restrains the person's freedom of movement through means intentionally applied. Brendlin v. California, 551 U.S. 249, 254 (2007).

**A. Seizure**. There is no dispute that defendant was seized within the meaning of the Fourth Amendment. It is a close question, however, whether the seizure occurred before or after Officer Nguyen smelled marijuana coming from the car. The court is somewhat hesitant to raise this issue given that the Government has not discussed it. But the issue is implicated by the evidence presented and the Fourth Amendment law governing seizures. Cf. United States v. Smith, 575 F.3d 308, 312

(3rd Cir. 2009) ("Any inquiry into an alleged seizure must begin by determining when the seizure occurred.").

Absent the use of physical force to restrain a suspect, a Fourth Amendment seizure occurs when: (1) the officer uses a show of authority <u>and</u> (2) the citizen submits to the assertion of authority. <u>United States v. Salazar</u>, 609 F.3d 1059, 1064 (10th Cir. 2010) (<u>citing California v. Hodari D.</u>, 499 U.S. 621 (1991) (suspect chased by police was not seized until he was tackled)). The test for determining if there was a show of authority is an objective one: whether the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement. <u>Salazar</u>, 609 F.3d at 1064 (<u>quoting</u> <u>Hodari D.</u>). In determining this question the court bears in mind that "law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." <u>United States v. Drayton</u>, 536 U.S. 194, 200 (2002).

As for the submission-to-authority requirement, this determination is made from the totality of the circumstances. Submission to a show of authority requires that a suspect "manifest compliance with police orders." <u>United States v. Martin</u>, 613 F.3d 1295, 1300 (10th Cir. 2010). "What may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." <u>Salazar</u>, 609 F.3d at 1065 (<u>quoting</u> <u>Brendlin v. California</u>, 551 U.S. 249, 262 (2007)). According to the Tenth Circuit, the matter is

determined "by examining the view of a reasonable law enforcement officer under the circumstances." <u>Martin</u>, 613 F.3d at 1300.

As noted above, Nguyen parked his car at an angle behind the Cadillac and turned on his cruise lights. The evidence about these lights was not complete. For example there was no evidence what color or size they are. There was testimony the lights are on the "left and right side" of the light bar on top of the patrol car, but no clarification of what, if anything, the lights were intended to convey to a motorist or whether they likely would have been visible to the occupants of the Cadillac. The Cadillac was already stopped when Officer Nguyen arrived and there is no clear evidence one way or another whether the occupants would have moved but for the officer's actions or, for that matter, whether they were even aware of the officer's presence behind them before he approached and spoke to them.

Even though the cruise lights did not flash, the court concludes their use in this manner would have caused a reasonable person to believe the officer was conveying a directive to stay put. Under the totality of the circumstances, the way the officer parked behind the Cadillac and turned on the cruise lights would be taken as objective signs by reasonable persons in the Cadillac that the officer intended to officially question them and was directing them not to leave. The court finds the officer's actions amounted to a show of authority.

As for the submission-to-authority requirement, defendant was a passenger in a car sitting at a gas pump when the officer pulled in behind him. The circumstances resemble the "man sitting in the chair" mentioned in <u>Brendlin</u>, where the Supreme Court suggested such a person would exhibit submission "by not getting up to run away." There is no

-6-

evidence that defendant attempted to get out or leave when Officer
Nguyen pulled in and turned on his cruise lights. There was no
specific evidence about how much time it took from when the officer
first pulled in until he made contact with defendant. The court infers
it was no more than a few minutes, given the testimony that Nguyen
called in the Cadillac's license tag before approaching the car. To
the extent the evidence shows anything about submission, the most
reasonable inference is that defendant and his companions submitted
to the officer's display of authority by remaining seated in the
Cadillac and not going anywhere before Nguyen's approach.   A
reasonable officer would perceive from the lack of any movement of the
car and the persons in it that they had submitted to the officer's
show of authority.[2] Cf. Verdier v. Borough, 796 F.Supp.2d 606, 622
(E.D. Pa. 2011) (no seizure occurred when officer pulled along side
parked car and used his "safety siren" because the siren did not
result in the occupant's submission); G.M. v. State of Florida, 19
So.3d 973, 982 (Fla. 2009) (no seizure where evidence showed passenger
was not aware of police presence behind his car). The court concludes
defendant was in fact seized before Officer Nguyen reached the
passenger side window of the Cadillac.

---

[2] In Brendlin, the Supreme Court said that "when an individual's
submission to a show of governmental authority takes the form of
passive acquiescence, there needs to be some test for telling when a
seizure occurs in response to authority, and when it does not."
Brendlin, 551 U.S. at 255. It identified that test as whether in view
of all the circumstances "a reasonable person would have believed that
he was not free to leave," or, if the person has no desire to leave
for reasons unrelated to the police presence, "whether a reasonable
person would feel free to decline the officers' requests or otherwise
terminate the encounter." Given the show of authority used by Officer
Nguyen, a reasonable person in defendant's position would not have
felt free to leave or to otherwise end the encounter.

**B. Reasonable Suspicion**. The prohibition against unreasonable seizures extends to brief investigatory stops that fall short of a traditional arrest. <u>United State v. Arvizu</u>, 534 U.S. 266 (2002). Under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." <u>United States v. Sokolow</u>, 490 U.S. 1 (1989) (quoting <u>Terry</u>, supra).

An investigative detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has committed or is committing a crime.[3] <u>United States v. McHugh</u>, 639 F.3d 1250, 1255 (10th Cir. 2011). Although reasonable suspicion requires the officer to act on something more than a hunch, the level of suspicion required is considerably less than a preponderance of the evidence or that which is required for probable cause. <u>McHugh</u>, 639 F.3d at 1255-56 (<u>citing</u> <u>inter</u> <u>alia</u>, <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)).

In determining whether reasonable suspicion exists the court looks to the totality of the circumstances rather than assessing each factor or piece of evidence in isolation. Additionally, the court need not rule out the possibility of innocent conduct. Reasonable suspicion may exist "even if it is more likely than not that the individual is not involved in any illegality." <u>McHugh</u>, 639 F.3d at 1255-56

---

[3] An investigative detention must also be reasonably related in scope to the circumstances which justified the interference in the first place. <u>Terry</u>, 392 U.S. at 20. But defendant only challenges the initial justification for the stop in this instance. Moreover, the evidence here clearly shows the detention was reasonable in scope.

[quotations and citations omitted]. All that reasonable suspicion requires is some minimal level of objective justification.

In making this assessment, the court gives deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions. McHugh, 639 F.3d at 1256. Also, the reasonableness of the officer's actions are judged using an objective standard. In other words, the officer's subjective beliefs and intentions are irrelevant. Under the objective standard the court asks "whether 'the facts available' to the detaining officer, at the time, warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'" McHugh, 639 F.3d at 1256 (quoting Terry, 392 U.S. at 21-22)).

Reasonable suspicion can be based on information supplied by a third person. "When the relevant information comes from a third party, the appropriate issue is whether that information, which the police officer relied upon in acting, possessed sufficient 'indicia of reliability.'" McHugh, 639 F.3d at 1257-58 (quoting Adams v. Williams, 407 U.S. 143, 147 (1972)).

In Adams, supra, a police officer in a high crime area late at night was approached by an informant who had supplied reliable information to him in the past. The informant said that a person parked nearby was in possession of narcotics and had a gun in his waistband. The officer approached the car, had the person roll down the window, and then seized the firearm from the man's waistband. The Supreme Court found that the officer "acted justifiably in responding to his informant's tip." Adams, 407 U.S. at 147. The Court pointed out that the informant was known to the officer, he had supplied reliable

-9-

information in the past, and he came forward personally to give information that was immediately verifiable at the scene. The Court rejected an argument that reasonable cause could not be based on third-party information, observing:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

Adams, 407 U.S. at 147.

By contrast, in Florida v. J.L., 529 U.S. 266 (2000) the Supreme Court found that an anonymous 911 call to police lacked sufficient indicia of reliability to establish reasonable suspicion for a Terry stop. The caller in that case reported that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. They patted him down, finding a weapon. The Supreme Court found the search unreasonable, noting that the officers' suspicion arose not from any observation of their own but "solely from a call made from an unknown location by an unknown caller." Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if the allegation turns out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." J.L, 529

U.S. at 271. And the fact that the caller had provided an accurate description of the subject's "readily observable location and appearance" may have helped the police correctly identify the person whom the caller meant to accuse, but it did not show that the tipster had knowledge of concealed criminal activity. "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." J.L., 529 U.S. at 272. The Court distinguished its decision in Alabama v. White, 496 U.S. 325 (1990), where an anonymous tipster accurately predicted the movements of a woman whom the caller said was carrying cocaine. Police observations confirmed the accuracy of the caller's predictions about the suspect's movements, which made it reasonable to think the tipster had inside knowledge about the suspect and to credit the caller's assertion that she was carrying cocaine.

As Alabama v. White indicates, the particularized basis for reasonable suspicion of criminal conduct may be supplied on the basis of a 911 call alone if it has sufficient indicia of reliability. If a call meets that standard, "a dispatcher may alert other officers by radio, who may then rely on the report ... even though they cannot vouch for it." See e.g., United States v. Cutchin, 956 F.2d 1216, 1217-18 (D.C. Cir. 1992) [citations omitted]. But if the 911 call lacks sufficient indicia of reliability, the resulting stop will be illegal unless the officers acting on the report have sufficiently corroborated it to furnish reasonable suspicion that the subject was

engaged in criminal activity.[4] <u>Cutchin</u>, 956 F.2d at 1218. <u>See</u> <u>also</u> <u>United States v. Chavez</u>, 534 F.3d 1338, 1347 (10th Cir. 2008).

The Fifth Circuit recently summarized this area of law as follows:

> Whether a 911 call provides reasonable suspicion to justify a stop is determined on a case-by-case basis. The factors that must be considered in deciding whether a tip provides a sufficient basis for a traffic stop include: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information in the tip or report can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity or has instead gone stale. If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based on the remaining factors. An anonymous informant's ability to describe a person's appearance and location is insufficient without more to create a reasonable suspicion of criminal activity. This court has observed, however, that "where instant caller identification allows the police to trace the identity of an anonymous telephone informant, the ready ability to identify the caller increases the reliability of such tips." Whether an officer has reasonable suspicion must be based upon the facts known to the officer at the time.

<u>United States v. Gomez</u>, 623 F.3d 265, 269 (5th Cir. 2010) [citations

---

[4] These conclusions derive from two Supreme Court cases dealing with reliance on police bulletins: <u>Whitely v. Warden</u>, 401 U.S. 560 (1971) and <u>United States v. Hensley</u>, 469 U.S. 221 (1985). In sum, those cases make clear that the validity of a stop or arrest in reliance upon a police bulletin or flyer turns on whether the law enforcement officer who issued the bulletin or flyer had the requisite reasonable suspicion or probable cause. <u>See</u> <u>Hensley</u>, 469 U.S. at 232 ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulleting justifies a stop.... [But] [i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in objective reliance upon it violates the Fourth Amendment.")

-12-

omitted].

In contrast to tips by unknown informants, the Fifth Circuit has said that when "an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." United States v. Burbridge, 252 F.3d 775 (5th Cir. 2001). As far as claimed eyewitnesses are concerned, "an ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect." Burbridge, 252 F.3d at 778. This is not the case, however, if the officer has some reason to believe the person was lying, did not accurately describe what they had seen, or was in some way mistaken. The Tenth Circuit appears to take a similar approach. See e.g., Munday v. Johnson, 257 Fed.Appx. 126, 131, 2007 WL 4246151, *5 (10th Cir. 2007) (citing cases; "the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, ... is appropriately relaxed if the informant is an identified victim or ordinary citizen witness.").

One difficulty in assessing reasonable suspicion here is a lack of evidence of what the respective officers knew and when they knew it. Officer Nguyen testified only that he was dispatched to the apartments on a suspicious person call, with the dispatcher reporting "that the subject was using drug[s]" and describing the subject's "red car, possible Cadillac" which had just left the apartments. Nguyen was not asked whether he knew that the source of the information was the apartment security guard or if he knew the basis for the assertion that someone in the car was using drugs.

-13-

Officer Powers testified that the source of the call was a contract security guard who said "he had observed some suspicious behavior from some males that were in the parking lot and he wanted us to come check them out." Powers met in person with the security guard while Nguyen was looking for the Cadillac. The evidence at the hearing did not include the specifics of what the security guard told Powers about drug use. Nor is there any evidence that Powers communicated the facts that he learned from the security guard to Nguyen. Just after Powers ended his conversation with the security guard, he received a call from Nguyen reporting that he thought he had located the suspect vehicle.

If these officers each had knowledge of a different set of facts – a point on which the evidence is not clear – a preliminary question arises whether their collective knowledge should be used to assess reasonable suspicion for the stop. "Under the collective knowledge doctrine, the officer who makes the stop need not have reasonable suspicion that criminal activity is afoot. Instead the knowledge and reasonable suspicions of one officer can [sometimes] be imputed to the other." United States v. Whitley, 680 F.3d 1227, 1234 (10th Cir. 2012).

The Tenth Circuit divides the doctrine into two types – vertical and horizontal. Under the vertical type, a stop is justified when an officer having reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action. Whitley, 680 F.3d at 1234. There is no evidence here that Powers instructed Nguyen to detain the Cadillac and its occupants. As such, Powers' knowledge of facts is not imputed to Officer Nguyen

-14-

under the vertical type. The horizontal doctrine, by contrast, comes into play when a number of law enforcement officers each "have pieces of the [reasonable suspicion] puzzle," but no single officer possesses information sufficient for reasonable suspicion. See United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008). In such situations, the court "must consider whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to meet the [reasonable suspicion] threshold."

The Government presented no specific evidence that Powers and Nguyen shared their information prior to Nguyen's detention of the Cadillac. As such, any particular facts known to Powers but not to Nguyen are not imputed to Nguyen under the horizontal collective knowledge doctrine. Cf. Chavez, 534 F.3d at 1347 (stating that in United States v. Shareef the Tenth Circuit "rejected a rule that information known, individually, to officers is pooled ... even absent any evidence of communication.");[5] Buck v. City of Albuquerque, 549 F.3d 1269, 1282 (10th Cir. 2008) (to consider collective knowledge under the "fellow officer rule," Government must point to an officer who "has relay[ed] information to, or receiv[ed] information from, fellow officers based on personal observation of the [arrestee]....").

---

[5] In Shareef the Tenth Circuit suggested in dicta that collective knowledge could be appropriate when two officers are working in tandem. See United States v. Shareef, 100 F.3d 1491, 1504 (10th Cir. 1996) ("Even in the absence of evidence of communication among officers, however, when officers act collectively it may sometimes be appropriate to look to their collective knowledge in determining whether they behaved reasonably."). Cf. United States v. Massenburg, 654 F.3d 480, 495 (4th Cir. 2011) (criticizing Shareef and other circuits that say "working as a team" may be a proper basis for aggregating knowledge; finding such an aggregation is contrary to the exclusionary rule).

The Government bears the burden of establishing by a preponderance of the evidence that reasonable suspicion supported a detention of the defendant. <u>United States v. Burciaga</u>, 687 F.3d 1229, 1230 (10th Cir. 2012). The evidence presented at the suppression hearing failed to meet that burden. For the reasons that follow, the court concludes that Officer Nguyen was not in possession of sufficient facts to warrant a reasonable suspicion of criminal activity when he detained the Cadillac and its occupants.

Officer Nguyen testified the message he received from dispatch said that someone in a red Cadillac at the Par Lane location was "using drugs." He was not asked to and did not elaborate on the report from dispatch. When Officer Powers was asked, he testified that a contract security guard at the apartments had reported to the 911 dispatcher that he "had observed some suspicious behavior from some males that were in the parking lot...." The evidence was unclear whether and to what extent these two officers may have communicated with each other before the stop or whether they received the same messages or information from dispatch. Although that is possible, it would be speculation for the court to infer from the evidence that the two officers were aware of the same facts.

This presents a problem for the Government, because it has failed to show any basis upon which the information known individually to the two officers should be considered collectively for purposes of assessing reasonable suspicion. As noted above, there is no evidence that Officer Nguyen was directed by Officer Powers to detain the Cadillac, nor was there evidence that any facts known to Officer Powers about the security guard's report were communicated to Officer

-16-

Nguyen before defendant was detained. See United States v. Whitley, 680 F.3d 1227, 1234 (10th Cir. 2012). Under the evidence presented, the only facts Officer Nguyen knew at the time he detained the Cadillac was that the dispatcher had conveyed a late-night report from some unidentified source that someone in the Cadillac was "using drugs," and the car was parked close to a gas pump and no one was standing outside or fueling it. Such an anonymous report of illegal activity, without any showing of reliability or articulable facts to support it, is insufficient to establish reasonable suspicion justifying a police detention.

But even if the court were to consider collectively all of the facts shown by the evidence to be known to the two officers, it still would not satisfy the minimum standards for a Terry stop. The problem is not that Officer Nguyen focused on the red Cadillac at the Quik Trip. Given the circumstances, it was reasonable for Nguyen to suspect that this was the vehicle reportedly seen at the nearby Remington Apartments. The law of probabilities would suggest there could not have been too many red four-door Cadillacs just east of the Remington Apartments at midnight on the night in question.

The problem is that – again insofar as the evidence actually presented is concerned[6] – the tip provided by the security guard

---

[6] No transcript or audio of the guard's 911 call was introduced. Nor did the dispatcher or the security guard testify at the hearing. No police reports were offered into evidence. The two officers who testified gave only cryptic descriptions of the information provided by the dispatcher. Officer Powers apparently spoke to the security guard before the defendant was detained by Officer Nguyen, but no evidence was presented that the guard provided information to Powers about drug use or other illegal conduct by these individuals.

The court reminds counsel for the Government that factual assertions appearing only in a brief are not evidence and cannot be

lacked sufficient factual detail to support any reasonable suspicion that the individuals in the car had engaged in criminal activity. According to Powers' testimony, the only thing the guard actually reported seeing was "suspicious behavior" by these individuals in the parking lot. That description is so vague that it could not reasonably justify a detention without further investigation of the facts. See United States v. Johnson, 620 F.3d 685, 693-94 (6th Cir. 2010) ("To the extent that the caller suggested a limited, unspecified possibility of criminal activity, her tip could not be considered reliable unless the officers' own observations raised the prospect of criminal activity.").

According to Officer Nguyen, the dispatcher conveyed that the subject was "using drug[s]." First of all, no direct evidence was presented that either police officer had knowledge that the security guard himself was the source of this allegation. The source or basis for the dispatcher's statement of drug use is not shown by the evidence. But even assuming this statement came from the security guard, on this record it still lacked sufficient factual detail to justify a detention. There was no evidence that the guard claimed to have personally seen these individuals using drugs. Nor does the record show what the guard observed. The reference to drug use may have been nothing more than the security guard's speculation about what the individuals were doing in the parking lot. Or he may have been relaying information to the dispatcher that he received from someone else. At the time of the initial detention the officers

_____

considered by the court.

-18-

apparently had no idea of what particular behavior the security guard had seen or on what basis he concluded that the individuals were using drugs. There is simply no evidence or description in the record of what was seen and by whom that led to the dispatch report that these individuals were "using drugs." Cf. McHugh, 639 F.3d at 1258 (officers entitled to rely on facts reported by security guard with whom they had previous relationship and who they knew had experience dealing with similar situations).

As Florida v. J.L. made clear, reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." The security guard's tip may have been reliable enough insofar as it tended to identify this red Cadillac, and by extension the persons in it. But the Government failed to show the report was reliable in its assertion of illegality. As noted above, no evidence was presented that the guard told the dispatcher he had witnessed illegal drug use and no factual basis was otherwise provided to support the claim of illegal activity. The Government has failed to meet its burden of showing that reasonable suspicion supported the initial detention of the defendant. And because the evidence subsequently found on the defendant and in the car was obtained through exploitation of this unlawful detention, that evidence must be excluded as a "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

In reaching this conclusion the court has considered the totality of the circumstances. This includes the fact that Officer Nguyen said he was suspicious because the Cadillac was parked so close to the gas pump and no one was standing outside fueling it. But the officer was

-19-

not asked to and did not explain what these facts meant to him. The court defers to the ability of a trained law enforcement officer to distinguish between innocent and suspicious facts, but in this instance there was a complete lack of evidence explaining or otherwise showing the nature of his suspicion or the inferences the officer drew from these facts. Cf. United States v. Carroll, 2012 WL 3186838, *1 (10th Cir., Aug. 7, 2012) (officer testified position of parked car was suspicious "because it was tactically parked in a manner that allowed anyone in the car to monitor the parking lot and street and to leave the parking lot quickly, obstructed visibility of the car's license plate, and provided cover against gunfire.").

## III. **Conclusion**.

Defendant's Motion to Suppress Evidence (Doc. 16) is GRANTED.

IT IS SO ORDERED.

Dated this 7th day of November 2012, at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-20-